The United States Court of Appeals for the Federal Circuit is now open and in session. God save the United States and this honorable court. All right, we'll hear argument first in 19-1852, Whitewater West Industries v. Alleshouse. Mr. de la Serra. Good morning. Manny de la Serra for Appellants Richard Alleshouse, Yong Ye and Pacific Surf Designs. Thank you for your time and consideration. Your honors, this appeal turns on the threshold question of whether California Business and Professions Code 16-600 in view of Labor Code 28-70 prohibits employers from requiring their former employees to assign back inventions conceived of post-employment without use of the employer's trade secret. Counsel, this is Judge Moore. Is it correct that there is no dispute that this invention was conceived and reduced to practice after the employee left the employment? That's correct, your honor. The answer to that question should be a resounding yes. Whitewater identified no case to the contrary. That is because doing so would directly contradict the strict black letter law and public policy of California that prohibits any post-employment restriction on employee mobility. Here, the trial court found, and Whitewater does not dispute, that Mr. Alleshouse conceived of the inventions no earlier than two weeks after the termination of his employment. Also, Whitewater does not allege that Mr. Alleshouse used any trade secret or confidential information. Counsel, this is one of the most difficult questions for you. Our Stanford decision has some broad language about 16-600. Can you please turn to that case and address why the facts here are different from there? Yes, your honor. In the Stanford case, at the district court level, the invention was actually – and this is addressed actually in my reply brief. The invention was developed and conceived of during the consulting agreement. It was not an employment agreement. It was a consulting agreement. And it was conceived of during that. So, there was never this issue of preconception or pre-termination, post-termination. That's the first distinction. The second distinction is that that was a consulting agreement. It wasn't an employment agreement as applied, for example, in armor light, applied materials, conversion logic, and highway, all of which were employment agreements. And so, that's the second distinction. So, if you look at this in the context of an employment agreement, every single case that has looked at this has divided the world between pre-termination and post-termination. If it's pre-termination, then there could be an assignment. If it's post-termination and there's no trade secret, then there is no assignment. That is the fundamental difference with the Stanford case. So, I'll continue. Each trial court has considered this question, including the Districts of California in armor light and applied materials, have consistently held that assignment obligations are void under 16600 when the extended invention is conceived of post-employment without the use of employer trade secret. Can I ask this question? This is Judge Toronto. Am I remembering correctly that we do not actually have any California state court at the appellate or supreme court level addressing this particular kind of restraint on a former employee? We have federal court decisions at the district court level. Your Honor, the most recent case on 16600 is the California Supreme Court on Ischel Pharma. That doesn't involve an assignment, right? It does not, Your Honor. Right. I'm just trying to clarify. Do we owe any kind of deference to various federal court decisions, federal district court decisions about the likely meaning of California law, or is it just those are the materials that are available for the particular situation and the much and the more general pronouncements of the California Supreme Court? In Edwards and Ischel and others about the strength of the 16600 prohibition on restraints on former employees, that those two things together tell us what the likeliest best interpretation of California law is. I think that's right, Your Honor. Obviously, this court need not abide by the district court cases. However, each of those district court cases are completely consistent with the appellate and supreme court cases on 16600 of which this court should take note because it is California law and it is California courts interpreting their own law. And with that, that's the only way that 16600 broad per se restriction against any post termination restriction and restraint can be reconciled. Ischel was very clear in stating that, quote, an employer cannot by contract restrain a former employee from engaging in his or her profession, trade or business. Counsel. Yes. So I guess my question is, if there's more again, is if those cases go to restraining employment, restraining practicing the profession, but this case goes to patent rights. There's no question this employee is free to continue working in the field. Nothing in the agreement he signed, the employment agreement restrains his ability to work. It only restrains his ability to obtain patent rights under certain limited circumstances. So why does this fall within 16600 and those cases that you cite? Your Honor, because 16600 is a basically, quote, unquote, take no holds bar approach to post termination restraint. Any restraint, even as low as paying $20 back, is found to be a violation of 16600. Counsel, it's not any restraint. It's any restraint from engaging in a lawful profession, trade or business. So what does that language mean, engaging in a lawful trade profession or business? Basically, it is employee mobility. The purpose of the statute, 16600, is to promote competition and to allow employees to move from job to job. Now, if we are left with a situation where Whitewater, under its current assignment provision, can indenture effectively Mr. All's house for his entire career, because there is no end point in the assignment provision, it's forever. I think what Judge Moore is asking you, and this is Judge Dyke, what Judge Moore is asking you is why does this assignment provision prevent this individual from practicing his trade or business? That's the question. Well, Your Honor, he cannot get hired by – if this restraint maintains, employers will not hire him because they will have to assign any work that they do in a particular field back to his previous employment. That restrains his ability to be mobile, and that's the fundamental purpose of 16600. If employees cannot move and take with them their training but not trade secret and either start a competing company or do or work with a competing company, then that's a restraint on their trade. That's a restraint on their ability to be able to work in the field they chose, and the courts are very clear here. Any restraint, no matter how minimal, triggers 16600, and there needs to be an exception, and those exceptions are listed specifically in the statute. None of those exceptions apply here. Can I ask this question? This is Judge Taranto. Following the approach of your reply brief in this morning's argument, you have rested your presentation, I guess, this morning entirely in the gray brief primarily on 16600, not on 2870. I just want to ask a question about that. When I read 2870 and think about the argument that was featured in your blue brief about its applying only to current employees' inventions, the problem that I see with that, and this may be a good reason for your reliance on 16600, is that it would, by its literal language, mean that 2870 simply does not address or therefore restrict agreements about former employees' inventions. There might be an implication that a fortiori former employees are free from such assignments, but if you're right, as I understood your original 2870 argument, that employee, where it's used, means current employee, the provision simply would not address former employees' inventions. I think that's right, Your Honor. The current reading of 2870 is that there has to be an employee-employer relationship. Otherwise, the statute would have said former employee and former employer. It does not say that. If you look, for example, at Division 3, which is what 2870 is a part of, and Labor Code Section 2750, it states that the contract of employment is a contract by which one who is called an employer engages another who is called an employee to do something for the benefit of the employer or the third party. Once the employment relationship is done, Mr. Allshouse is no longer an employee. Counsel, I'd like to follow up on this. It's more unjust for Honor's question because if your position is correct that 2870 simply doesn't apply to circumstances where the employment relationship has terminated, so it never applies in a backward-looking fashion, then how in the world do we construe A1, which focuses on whether or not the invention was conceived or reduced to practice at the time you were employed, right? How do we understand that in the context of this section doesn't apply at all to anyone once the employment rights are terminated? I'm not understanding your argument, Your Honor. It's not an argument, Counsel. It's a question. But the question was, how do we look at A1 in light of the argument you're making about timing? You're making a timing argument. You're saying 2870 as a whole doesn't apply any longer, and employees can't be replaced. You can't be restricted because once you're no longer an employee, you can't be restricted. Is that right? That's correct, Your Honor. Well, then why would it have this portion within it that talks about whether or not you invented during the course of your employment? You conceived and reduced to practice. Why would that timing provision need to be in there at all if this section simply never applied once the employment agreement no longer existed? Well, Your Honor, A1 states relate at the time of conception or reduction to practice of the invention to the employer's business. There's no statement in there that it has to be within the confines of employment like I believe you're stating. This section basically has two hooks, one of which is if you conceive of this during your employment and it's part of the business of the employer, then you must assign. And that restriction would continue after the employment is terminated, right? I don't believe so, Your Honor, and I think this court in Aplera basically stated that 2870 does not confer any rights, any additional rights to the employer. It's a protection to the employee. But if an employee conceives of an invention while employed, then leaves and the assignment hasn't taken place, there's still an obligation to assign after the termination of the employment, right? That's correct, but that's not the situation here, Your Honor. No, I understand that, but your broad statement about this not applying to former employees is not correct. It does apply to former employees who conceived of inventions while they were employed, right? That's correct, and that's consistent with the district court case law in Elmer Light and conversion logic. That's correct, Your Honor. But again, I must stress that that's not the issue here. Your Honors, I see that I'm at 14 and a half minutes, actually at 15 minutes at this point. Would you like to continue? If my colleagues have further questions, we'll hear from Mr. Scott. We'll restore your rebuttal time, Mr. Yosera. Thank you, Your Honor, I appreciate it. Okay, we'll hear from Mr. Scott next, please. Mr. Scott, are you there? Yes, good morning. The typical thing we have now where people forget to unmute. I apologize. May it please the court, my name is Roger Scott of the law firm Buckhalter. I, along with my colleague, Rick Cache, represent Apelli Whitewater West Industries Limited. I will be speaking to the issues related to the assignment provision in Mr. Alefant's employment contract, and Mr. Cache will address any issues the court may have relating to Mr. Yeh's alleged co-inventorship of patents at issue. Let me ask you a question about 16-600 as construed by the California Supreme Court in the recent Exchel decision. That case seems to suggest that there is a rule of reason under 16-600, and I guess my question is how can it be that the provision of this agreement, which requires the future assignment of any newly created inventions in the future, the indefinite future, just because they relate to the former employer's business, can possibly be a valid provision of the agreement? Well, Your Honor, I think that the language of the contract, especially when it's tied with the language of Labor Code 2870, may dictate that the legislature has said that relating to the employer's business is an appropriate subject matter restriction. Well, but that's not the question. The contract, the assignment provision, says that it applies to inventions here and after made or conceived by the employee, quote, in any way connected to any subject matter within the existing or contemplated business of the company. So that provision would seem to require the assignment of an invention conceived after employment, 10 years after employment, that relates to the former employer's business. Am I wrong in reading it on its face that way? I don't think that you're incorrect in reading it on its face that way. However, I think that there's a natural connection here that has to be proven by fact, that it actually relates to the employer's business, and that over a period of time, that relationship simply goes away. I think that that's even more true with respect to the other provision of the contract that says that an invention that results from the employee's work at the employer must be assigned back, which is similar to the language that's in 2878-2. Counselor, I'd like to follow up on Judge Stike's question because I'm going to be honest. Your answer made absolutely no sense to me. What do you mean over time the relationship goes away? I apologize if I wasn't clear. Relating to the employer's business is what the employee was doing or what the business was at the time that the employee worked there. Obviously, if the employer's business changes or the employee does something afterwards that's different, then it's not going to tie back and it's not going to be factually related to the employer's business, and the employer is not going to be able to claw that back. Yes, but I think Judge Stike's question is, 10 years down the road, if this business is still in the same business, and 10 years down the road while working at a completely different but competitive company, this inventor comes up with an idea that relates to that same business that the other employer is still in, that other employer can claim ownership over any intellectual property rights related to that newly conceived concept 10 years down the road. Is that correct? Your Honor, he's hit on obviously the most difficult portion of our position, and I understand that that's the interpretation that could be taken. I don't think that that is correct. I think that there must be some tie to what the employer was doing, excuse me, what the employee was doing at the time he was employed there, and that going and working for another competitor and conceiving of something that is related to the competitor's business, even if it's in the same line, is not really going to tie back to what the employee was doing there. Okay, so let's assume for the moment that the broad construction that Judge Moore and I have suggested to you is correct, and that this does apply for the indefinite future to any newly invented inventions that relate to the former employer's business. Would that provision be valid under 16-600? I don't think that that provision would be valid in that construed context under either 16-600 or 28-70. However, what I will point out is that 28-70 allows for the voiding of a specific provision if it exceeds 28-70. So here you could line out the, you know, if that was the interpretation to be taken, then that specific subsection of the contract, I believe that's subsection 2AC in this contract, would be lined out. But it would not invalidate the entire contract, nor would it invalidate the entire assignment provision. So what about the Coady decision that says that the entire contract does fall if it violates 16-600? Well, I believe that what Tawani says is that you can't blue pencil the contract. You can't narrow it. And there's also a distinction in the language between 16-600, which says that any contract is to that extent void, versus 28-70, which allows for any provision to be voided. So I think that if you're applying 16-600, there may be a broad strokes deletion. But if you're applying 28-70, then you narrow the provision itself, which in this case is the subsection that might go beyond 28-70, without affecting the other subsections. For example, subsection, I think it's 2AB in the contract, that says results from, which is the portion of the contract the district court actually applied. Okay. So we're left, under the broad construction of this agreement, we're left with the question as to whether you can, as you put it, blue pencil a contract or whether it becomes invalid as a whole because of this invalid provision, right? If you're applying 16-600, and I think one of the larger questions here is the intersection between 28-70 and 16-600. And, you know, looking at the California Supreme Court's recent opinion in Ixchel, one of the statements that struck me is it says, that the language in a judicial opinion is to be understood in accordance with the facts and issues before the court. And that's in Ixchel at 9 Cal 5, 1158. And they're citing Chevron, which is an older California Supreme Court case. And here, all of these decisions that discuss 16-600 and the broad strokes, none of them discuss 28-70. None of them have looked at 28-70. And as far as I can tell, none of them have ever been presented with the question of how 28-70 interacts with 16-600. So I think it's very difficult to say, as a blanket statement, that because the other provisions that have been invalidated under 16-600 are invalid, that a provision that complies with 28-70 would be invalid. I think Judge Moore asked a question about restraining employment. How is this provision consistent with 28-70? Are you reading 28-70 as saying that you can have a future restraint on new inventions that's valid? Yes. I think that 28-70, as it's written, does not have any time constraints. The use of the words employer and employee are basically identifiers of the people who enter the contract at the time. I don't think that there's any restriction to say that just because somebody becomes a former employee later that the legislature needed to write down every single potential thing that might happen, future employer, former employer, et cetera. They're just contract identifiers. And nowhere does it say this cuts off at the time the employment ends. And I think that that's actually bolstered by the next section, 28-71, which the legislature did specifically write in the words during employment. So the legislature knew how to restrict something to the scope and time of employment if it wanted to, but did not apply that in 28-70. Counsel, I totally understand your distinction, the differentiation argument between 28-70 and 71, and it's a very good point, but I'd like to turn to the language of 28-70. Why do you think, if it wasn't to focus on timing, why do you think the California legislature added the A-1 restriction that it has to relate at the time of conception or reduction of practice to the employer's business? Why wouldn't he just say an invention that relates to the employer's business? Why would they put that timing portion into A-1? I see that I have time. May I still respond to your question, Your Honor? Go ahead. I think that that timing provision is actually very important, and I think it also sets up the distinction between 28-70, A-1, and A-2. I think the restriction on timing in A-1 is trying to tie it to what the employee was doing at the time he worked there, and 27-A-2 does not make any timing restriction at all. It just says results from, which is really the situation we have here, where an employee was doing something while he was employed, decided he wanted to compete, left, and then immediately finalized the invention afterwards. So you can look to what the invention resulted from without restriction on timing, whereas A-1 is specifically restricted in time. Okay. Unless my colleagues have further questions, we'll hear from Mr. Taché. Good morning, Your Honors. May it please the Court, Rick Taché on behalf of Whitewater West Industries. Rather than ask this Court to review the District Court's factual determinations for clear error and review its legal conclusions de novo consistent with established law, instead, appellants ask this Court to undertake its own credibility determinations and reweigh the evidence by conducting a de novo review, not just of the District Court's legal conclusions regarding the date of conception and inventorship, but also its underlying facts. The District Court, based on the totality of the evidence, including but not limited to the images contained in Mr. Eilshaus' notebook that are dated between August 4th, the day that the company opened, and August 16th, 12 days later, the testimony of the witnesses, emails between the principals at Pacific Surf Designs, Mr. Eilshaus and Mr. Yeh, videos of Mr. Eilshaus and Mr. Yeh, the patents at issue, and their file histories, the Court determined that Whitewater West established, by clear and convincing evidence, the date of conception as August 16th, 2012, and that each and every claim limitation in the patents at issue was conceived by Mr. Eilshaus. The District Court also made secondary factual findings based upon evidence presented regarding the WaveLock technology and the Lockithelf patents that were cited by the Patent Office to further support its legal conclusion that Mr. Yeh did not contribute to the conception of the patents at issue because all of Mr. Yeh's alleged contributions that were set forth in their verified responses to the interrogatory requests were merely recitations of well-known concepts or current state-of-the-art that were known by Mr. Eilshaus as one of ordinary skill in the arts and because of his employment working with Mr. Lockithelf at WaveLock at the time of conception. And where the findings are based on determinations regarding credibility of witnesses, as was the case here, the Supreme Court in Anderson v. Bessemer City in North Carolina said that Rule 52A demands even greater deference to their trial court's findings for only the trial judge can be aware of the variations in demeanor and tone of voice that bear so heavily on the listener's understanding of and belief in what is said. And the court went on to further state that when a trial judge's finding is based on his decision to credit the testimony of one of two or more witnesses, each of whom has told a coherent and factually plausible story that is not contradicted by the intrinsic evidence, that a finding, if not internally inconsistent, can virtually never be clear error. And as such, the appellants here have failed to identify any clear error by the district court in its factual determinants so as to warrant a de novo review of the district court's legal conclusions on the issues of the date of conception and inventorship. And unless the court has questions for me, I'm happy to yield my time. Okay. Hearing no further questions, let's hear from Mr. De La Sera. You have three minutes. Thank you, Your Honors. I'd like to direct your attention to the EPLERA case, which basically states that when the 2870 contract is written solely by the employer, it must be construed strictly against that employer, which is the case here. I don't think under California law, and it's pretty clear that under Dow and its progeny, that a district court can redline or blue line any sort of violation of 16600. In Dow, for example, the court said, any attempt to construe the non-compete and non-solicitation clauses in such a manner to make them lawful would not be reforming the contract to correct the mistake of the parties, but rather to save a statutorily prescribed and void provision. One other thing that should be mentioned here is that when this contract was drafted between Alls House and Whitewater, Whitewater did not, as the employer, advise Alls House as the employee of 2870 and the bounds of 2870 as required by Section 2872. Further, the counsel for Eppley's continues to use the language derived directly from Labor Code 2870. In particular, Section A1, relate at the time of conception, and Section A2, results from any work performed by the employee or for the employer. But the actual language of the assignment provision here is much broader. It states, resulting from or suggested by employees' work. That's broader than 2870. And in Section C, in any way connected to any subject matter within the existing or contemplated business of the company. It's hard to imagine that anything would be outside of the scope of that. And so when Eppley's counsel states that if this assignment provision were to be interpreted to last forever, which indeed it does say conceives of or here and after may conceive of, that lasts forever, it would violate 2870 and 16600. Imagine if this court were to uphold Whitewater's reading of this provision. Then employers would hire every available engineer in their industry and have them sign an assignment provision, and then immediately fire those employees. Any invention from those engineers would require assignment, provided it is, quote, in any way connected to anything. Counsel, I think that your opponent suggested, when we were talking about this blue pencil versus invalidating the contract as a whole, could blue pencil out just provision C, if you were worried about timing, and you could leave B, which is, he said, what the district court actually applied. Why couldn't we leave B intact? Well, because the language of B is actually broader than the statute. It states resulting from or suggested by. If the trial court were to simply line out- You haven't explained to me how those two words are different from each other, and I'm not sure that isn't really just a redundant concept. What do you mean? You didn't argue in your brief to me that resulting from or suggested by are two different standards which have different breadth or scope. Oh, I think they are, and I think we did argue that in our brief. But to answer your question directly, Your Honor, if, for example, I was working at a tire manufacturer and typing up a report, and an idea came to my mind regarding a new keyboard that might help me type this up faster, is that suggested by my work for the employer? I would argue that it is. I would also argue that it's not related to. Where is it related to? It's resulting from work you did. Certainly that new idea does result directly from the work you were doing. If that is the bounds, Your Honor, of 2870, that anything you do during the time frame, any concept you have from the time frame that I believe 2870, then the assignment provision here has absolutely no bounds, none. And it would be impossible for me or Mr. Altshaus to ever, ever work as an inventor in any other capacity in the waterworks field or really any other field if resulting means that broad. And more importantly, if that resulting from has no tail end, if it exists forever, if Mr. Altshaus were to have called me this morning and said, I have another idea for a wave ride, do I then need to call Whitewater's counsel and say, hey, look, we've got something to assign to you? And if that's the case, when does it stop? If that's the case, 16600 means nothing. And clearly the eggshell recent promulgation from the State Supreme Court states that any restriction is invalid unless it's specifically cited. And the one thing is that 2870 is not cited, and yet the applied materials, the conversion logic case, the hallway case, the armor light lens case, were all known to the legislature. They amended several times since the inception of 2870, and at least four respects they amended and included exceptions to 16600. But 2870 is not among them. And the reason is- Mr. De La Sera, I think unless there are further questions, we're out of time here. Hearing none, thank you. Thank both counsel. The case is submitted.